IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:23-CT-03166-M-RJ

JARELL DONTE BALLENTINE, )
)
Plaintiff, )
)
v. ) ORDER
)
CORRECTIONS OFFICERS, et al., )
)
Defendants. )

This cause is before the court on the parties' cross-motions for summary judgment. See Mot. [D.E. 26]; Mot. [D.E. 34]. For the reasons discussed below, the court grants defendant's motion for summary judgment and denies plaintiff's cross-motion for summary judgment.

Relevant Procedural History:

On May 30, 2023, Jarell Donte Ballentine ("plaintiff"), then a state pretrial detainee at the Harnett County Detention Center (the "HCDC"), proceeding *pro se* and without prepayment of fees, filed an unverified complaint under 42 U.S.C. § 1983. See [D.E. 1, 2, 7].

On August 16, 2023, the court conducted its initial review, allowed the complaint to proceed against Andrew Whitley ("Whitley" or "defendant") as to a March 18, 2023, use-of-force incident at the HCDC, but dismissed other claims and defendants. See Order [D.E. 8].

On November 2, 2023, defendant answered the complaint. See Answer [D.E. 20] (raising, *inter alia*, plaintiff's failure to exhaust administrative remedies as an affirmative defense).

On March 20, 2024, defendant filed a motion for summary judgment, Mot. [D.E. 26], together with a statement of material facts [D.E. 27], an appendix [D.E. 28], and a memorandum

in support [D.E. 29]. Also on that date, and pursuant to Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (per curiam), the court notified plaintiff about the motion for summary judgment, the response deadline, and the consequences of failing to respond. [D.E. 30].

On May 7, 2024, plaintiff filed a response in opposition, a cross-motion for summary judgment, a memorandum, a statement of facts, and an appendix. See Mot. [D.E. 34].

On December 15, 2024, the court: noted the complaint, on its face, acknowledged plaintiff did not exhaust administrative remedies; allowed defendant until January 15, 2025, to supplement his motion for summary judgment to address administrative exhaustion under the Prison Litigation Reform Act ("PLRA"); and allowed plaintiff until January 30, 2025, to file any further response.

On January 15, 2025, defendant filed a memorandum, Def.'s Mem. [D.E. 37], with the declaration of Tracy Hamby, see Def.'s Mem. Attach., Ex. 1, [D.E. 37-1] at 1–4, and exhibits in support, id., Ex. A, [D.E. 37-1] at 5–9, Ex. B, [D.E. 37-1] at 10–11, Ex. C, [D.E. 37-1] at 12–13.

Plaintiff, however, did not further respond and the time to do so has passed.

Legal Standard:

Summary judgment is appropriate when, after reviewing the record as a whole, the court determines that no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). The party seeking summary judgment must initially demonstrate the absence of a genuine issue of material fact or the absence of evidence to support the nonmoving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the nonmoving party may not rest on the allegations or denials in its pleading, Anderson, 477 U.S. at 248–49, but "must come forward with specific facts showing that there is a

genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis and quotation omitted). A court reviewing a motion for summary judgment should determine if a genuine issue of material fact exists for trial. Anderson, 477 U.S. at 249. In making this determination, the court must view the evidence and the inferences drawn therefrom in the light most favorable to the nonmoving party. Scott v. Harris, 550 U.S. 372, 378 (2007).

"When cross-motions for summary judgment are before a court, the court examines each motion separately, employing the familiar standard under Rule 56 of the Rules of Civil Procedure." Desmond v. PNGI Charles Town Gaming, L.L.C., 630 F.3d 351, 354 (4th Cir. 2011)

Discussion:

Defendant argues plaintiff failed to exhaust administrative remedies at the HCDC before filing this action. See Def.'s Mem. [D.E. 37].

The PLRA states, in relevant part: "No action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); Jones v. Bock, 549 U.S. 199, 211 (2007) ("[E]xhaustion is mandatory under the PLRA and . . . unexhausted claims cannot be brought in court."); Woodford v. Ngo, 548 U.S. 81, 85 (2006) ("Exhaustion is no longer left to the discretion of the district court, but is mandatory."). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). Successful exhaustion of administrative remedies "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." Woodford, 548 U.S. at 90 (citation, alteration, and quotation marks omitted).

Administrative exhaustion under the PLRA, however, is mandatory only if the grievance procedure is "available." Ross v. Blake, 578 U.S. 632, 642 (2016) ("Ross"). Grievance procedure is not "available" when: (1) it "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) it is "so opaque that it becomes, practically speaking, incapable of use"; and (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. at 643–44; see also Griffin v. Bryant, 56 F.4th 328, 335–39 (4th Cir. 2022); Moss v. Harwood, 19 F.4th 614, 621–23 (4th Cir. 2021); Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008) ("[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it.").

Failure to exhaust administrative remedies is an affirmative defense that defendants generally must plead and prove. See Jones, 549 U.S. at 216–17; Wilcox v. Brown, 877 F.3d 161, 167 (4th Cir. 2017); Custis v. Davis, 851 F.3d 358, 361–63 (4th Cir. 2017).

Here, Tracey Hamby declares, *inter alia*, that: as the Jail Administrator, Hamby is familiar with HCDC policies and practices, including the grievance policy, and is the custodian of HCDC records for current and former inmates; the attached documents and exhibits are authentic and are kept in the course of regularly conducted activity; the HCDC has a grievance policy that was in place when plaintiff was there; "It is standard policy and practice of the HCDC that when an inmate wishes to file a grievance, the inmate may request a handwritten grievance form, as set forth in Exhibit B, which is then turned back in to a detention officer. The grievance will then be turned over to the Jail Administrator or either of the two jail lieutenants"; "Additionally, inmates have access to an electronic kiosk (one in each pod) where they can electronically submit a grievance";

"all grievances are reviewed by the Jail Administrator or his/her designee"; "Informal resolution of grievances is strongly encouraged, but if the Detention Staff Member and the inmate are unable to reach a resolution, a grievance form will be provided to the inmate"; "Once the form is completed by the inmate, detention staff will use the second portion of the form to document efforts made to resolve the complaint. This process should be completed, and a copy of the grievance form returned to the inmate within 15 days of receipt"; "Grievances filed on paper are stored in a secure location accessible by the Jail Administrator and the two jail lieutenants"; "Grievances filed using the kiosk are stored and saved in a software program called VendEngine," which "can be searched by inmate name or date of grievance"; Hamby "has reviewed every grievance from the HCDC electronic system and hard copy files for the months of March, April, and May 2023," and "reviewed [plaintiff's] entire inmate file"; based on Hamby's review, plaintiff had the opportunity to file a grievance while at the HCDC "but did not file a grievance regarding the allegations in the Complaint or any other matters"; based on Hamby's reviews "of the grievances in the custody of the HCDC" and plaintiff's "inmate files and records specifically," plaintiff "did not file a grievance concerning any March 2023 incident, nor did he file any grievances concerning detention officer Whitley"; "the Incident Report of Sergeant Dawson further confirms that Plaintiff was aware of the Grievance process at the HCDC, stating: 'Action Taken: Given a Grievance'"; "However, to the extent such a grievance form was provided to Plaintiff, based on [Hamby's] review of the records of HCDC and Plaintiff's inmate file, [plaintiff] did not fill out the form or otherwise submit a grievance"; and, in summary, plaintiff "failed to use the grievance process at the HCDC" and "did not exhaust the grievance process at the HCDC regarding the March 2023 incident." Def.'s Mem. Attach., Ex. 1, Hamby Decl. [D.E. 37-1] at ¶¶2–13.

5

The record supports Hamby's declaration. The HCDC Inmate Grievance Procedures provide, *inter alia*: an "informal grievance," a verbal communication between the inmate and an official, is the "lowest level" of the grievance process; a "formal grievance" is a "written complaint by an inmate on the inmate's own behalf regarding a policy applicable within the institution, a condition within the institution, action involving an inmate or staff member of the institution, or an incident occurring within the institution"; "All grievances will be reviewed by the Detention Administrator or designee"; HCDC policies and procedures, denial of grievance forms, reprisals for grievance procedure participation, and any "matter relating to conditions of care or supervision within the facility" may be grieved; informal resolution is encouraged but, if not reached, the Pod Unit Officer will provide the inmate a grievance form; the inmate completes and gives the form to the Pod Unit Officer who "will forward the completed grievance form to the Shift Supervisor, who in turn forwards it to the Detention Director or his designee"; "The inmate may request a copy of his submitted grievance form"; "The inmate grievance follow-up portion of the grievance form will be used by the Detention Director or his designee to document efforts which were made by the Unit Officer, Pod Area Supervisor and/or Shift Supervisor to resolve the complaint which proved unsatisfactory to the inmate and resulted in the submission of the grievance form"; "The Detention Director or his designee assigned the investigation of the grievance will record his findings in the space marked, 'Officer's Comments,' then sign and date the grievance form"; "This process should be completed and a copy of the grievance form returned to the inmate within 15 days of reception"; "Inmates requesting a grievance form will be provided one by the Pod Officer before the conclusion of the shift on which he/she requested it, if possible"; "If a grievance cannot be resolved within the 15 day limitation because of the need for further investigation, the inmate

will be advised in writing by the Detention Director or his designee"; "Response to the grievance will occur when resolution can be accomplished"; "When an emergency complaint shows a threat to the health and welfare of an inmate, the grievance will be addressed as promptly as possible"; "Retribution will never be taken against an inmate because his/her filing of a grievance"; and, "After each inmate grievance is investigated and an appropriate response has been sent to the inmate, a copy of the grievance is stored in the inmate's file for a minimum of 5 years." See id., Ex. A, [D.E. 37-1] at 5–9; see also id., Ex. B, [D.E. 37-1] at 10–11 (blank HCDC Inmate Grievance form with space for inmate signature, date, description of the nature of the grievance, receiving officer info, resolution, comment, and noting fifteen working days are allowed for staff answer).

The record also includes a March 19, 2023, HCDC incident report by Sgt. Dawson, stating:

> At approx. 0000 Officer Whitley called via telephone to tell me [plaintiff] wanted a grievance. I instructed him to give [plaintiff] one. Mins later Officer Whitley called me again and stated that [plaintiff] said [Whitley] closed [plaintiff's] leg in the door to his cell[.] I called Officer Nunes to come assist me in C-Pod[.] Once we arrived, I asked [plaintiff] what was going on[.] He replied, "I'm not a snitch." He stated that Officer Whitley closed his leg in the door to his cell. After making that statement, [plaintiff] stated I know he was not trying to hurt me intentionally.

Id. Ex. C, [D.E. 37-1] at 12–13 (noting plaintiff sustained no injury and was "given a grievance").

Plaintiff's response in opposition to the motion for summary judgment does not address exhaustion. See generally Pl.'s Resp. [D.E. 34]. Also, the conclusory allegation in his unverified complaint – that he filed a grievance but did not complete the procedure because they "never responded back within at timely manner [sic]," Compl. [D.E. 1] at 8 – fails to show that the HCDC grievance procedure was "unavailable" to him within the meaning of Ross, 578 U.S. at 643–44, and is insufficient to defeat defendants' motion for summary judgment, see Fed. R. Civ. P. 56(e); Wai Man Tom v. Hosp. Ventures LLC, 980 F.3d 1027, 1037 (4th Cir. 2020) ("conclusory

allegations or denials, without more, are insufficient to preclude granting [a] summary judgment motion"); see also Rinaldi v. United States, 904 F.3d 257, 268 (3d Cir. 2018) ("once the defendant has established that the inmate failed to resort to administrative remedies, the onus falls on the inmate to show that such remedies were unavailable to him" (citations omitted)); Albino v. Baca, 747 F.3d 1162, 1172 (9th Cir. 2014) (finding, if defendant shows a prisoner did not use available administrative remedies, the burden "shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him"); Tuckel v. Grover, 660 F.3d 1249, 1254 (10th Cir. 2011) ("Once a defendant proves that a plaintiff failed to exhaust, however, the onus falls on the plaintiff to show that remedies were unavailable to him as a result of intimidation by prison officials."); Graham v. Gentry, 413 Fed. App'x 660, 663 (4th Cir. 2011) (per curiam) (unpublished) (noting plaintiff bears the burden of showing unavailability of administrative remedies (citing Moore, 517 F.3d at 725)); cf. Griffin, 56 F.4th at 335–39.

Considering the record evidence and reasonable inferences drawn therefrom in the light most favorable to plaintiff, Scott, 550 U.S. at 378, defendant has met his burden of demonstrating the absence of a genuine issue of material fact as to plaintiff's acknowledged failure to exhaust administrative remedies at the HCDC before filing this action, Celotex, 477 U.S. at 325; see Jones, 549 U.S. at 216–17; Wilcox, 877 F.3d at 167. As to the alleged "unavailability" of the HCDC grievance procedure, however, plaintiff fails to "come forward with specific facts showing that there is a genuine issue for trial." Matsushita, 475 U.S. at 587 (emphasis and quotation omitted). Thus, regardless of the merits of plaintiff's complaint, defendant is entitled to summary judgment, Anderson, 477 U.S. at 249; see Jones, 549 U.S. at 211; Woodford, 548 U.S. at 85.

8

Accordingly, the court dismisses the action without prejudice due to plaintiff's failure to exhaust administrative remedies before filing suit, see Moss, 19 F.4th at 623 n.3 (collecting cases), and, because the court need not reach the merits of unexhausted claims, denies plaintiff's cross-motion for summary judgment, accord Tart v. Hovis, No. 5:17-CT-3252-BO, 2020 WL 465325, at *2 (E.D.N.C. Jan. 28, 2020), aff'd, 811 F. App'x 844 (4th Cir. 2020) (per curiam) (unpublished).

Conclusion:

For the above reasons, the court: GRANTS defendant's motion for summary judgment [D.E. 26]; DISMISSES WITHOUT PREJUDICE the action due to plaintiff's failure to exhaust administrative remedies; DENIES plaintiff's cross-motion for summary judgment [D.E. 34]; and DIRECTS the clerk to close the case.

SO ORDERED this 10th day of February, 2024.

RICHARD E. MYERS II
Chief United States District Judge